IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELIZABETH CABAN-VALENTIN,

   Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

CIVIL NO. 11-1962 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Elizabeth Cabán-Valentín (hereafter plaintiff "Cabán-Valentín") filed this action to obtain judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for a period of disability and ensuing disability benefits. (Docket No. 1). [1]

On March 27, 2012, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 5, 6). On April 30, 2012, plaintiff Cabán-Valentín filed, through Atty. Salvador Medina De-La-Cruz, a consent to proceed before the Magistrate Judge. (Docket No. 11). [2] On July 27, 2012, Atty. Medina De-La-Cruz filed plaintiff's memorandum of law. (Docket No. 18). Thereafter, the Commissioner filed his memorandum. (Docket No. 19).

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

# BACKGROUND

On July 5, 2007, plaintiff Cabán-Valentín filed an application for disability benefits with onset date of disability of January 16, 2007. After the application was initially denied, the requested administrative hearing was held on April 23, 2009. Thereafter, the presiding Administrative Law Judge (hereafter "ALJ") issued an opinion finding plaintiff Cabán-Valentín was not disabled before December 3, 2007, for she could still perform her past relevant work as kitchen worker. The ALJ found plaintiff disabled after said date, but not before. The Appeals Council denied the request for review.

Plaintiff Cabán-Valentín seeks judicial review of the final decision of the Commissioner denying disability before December 3, 2007, for the ALJ disregarded the vocational expert's testimony at the administrative hearing that her past relevant work as a kitchen worker entailed the ability to walk around, grab, pull, push and lift objects of up to 25 pounds frequently and required good concentration and attention, good judgment and emotional stability to interact with co-workers. The ALJ did not present to the vocational worker any hypothetical questions, merely allowing testimony as to the vocational profile. (Docket No. 18, pp. 12-13). Plaintiff Cabán-Valentín submits the requirement of the past relevant work, as testified by the vocational expert, exceeded plaintiff's residual mental capacity as had been determined by the ALJ previously that there were moderate limitations regarding activities of daily living, moderate limitations or difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace. (*Id.*).

On the other hand, the Commissioner's memorandum of law indicates the ALJ issued a partially favorable decision finding plaintiff Cabán-Valentín disabled as of December 3, 2007, but not before such date. In summarizing the medical evidence of record which served as ground to the ALJ's findings, the Commissioner agrees with the statement in plaintiff's memorandum and supplemented same. (Docket No. 19, p. 2). The ALJ agreed that plaintiff Cabán-Valentín was diagnosed with a depressed mood, psychomotor retardation and abnormal insight and was treated by a psychiatrist and a psychologist between November 29, 2006 and July 10, 2007, before her insured period expired. (*Id.*, p. 3). However, the ALJ determined that by the beginning of December 3, 2007, plaintiff was restricted from contact with the public and more than occasional contact with supervisors and co-workers. Still, prior to December 3, 2007, Cabán-Valentín had the residual functional capacity to perform unskilled, repetitive work. Since her work as a lunch worker was not precluded by plaintiff's assessed capacity for unskilled work, as the ALJ found supported by the relatively minimal medical treatment received prior to said date, plaintiff Cabán-Valentín was found not under disability prior to December 3, 2007.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

After the initial application was denied, plaintiff Cabán-Valentín waived being present at the requested administrative hearing held on July 9, 2009, wherein the ALJ entertained the testimony of a vocational expert, Dr. Marieva Puig (hereafter "Dr. Puig"). The vocational expert testified as to an individual, such as plaintiff Cabán-Valentín, who was reaching advanced age and worked as a kitchen worker, a non-skilled job of medium physical demand. The job required plaintiff be able to remain standing or seated, the ability

to work around, to grab, pull, push and lift objects approximately 25 pounds frequently and have good concentration and attention, good judgment and emotional stability in order to interact with co-workers. (Docket No. 5, Transcript, p. 42).

The ALJ determined Cabán-Valentín met the insured status requirement up to June 30, 2012. Plaintiff did not engage in substantial gainful activity since January 16, 2007, the alleged onset date of disability. Cabán-Valentín was found to have severe impairments, to wit, lumbar broad disc bulges at L4-L5 and L5-S1, cervical central and right paracentral disc protrusion at L5-C6, with mild anterior cord compression, central canal stenosis and impingement of the right side of the C6 nerve root, left should partial tear of the subscapularis tendon, bicipital tenosynovitis and a major depression. (*Id.*, p. 18). Cabán-Valentín suffered an ischemic syndrome, unstable angina pectoris, coronary artery disease, which required hospitalization from September 27-30, 2007, at the Buen Samaritano Hospital. She suffered also from arterial hypertension and diabetes mellitus II. (*Id.*, p. 19).

The ALJ concluded that, since alleged onset date, Cabán-Valentín did not have an impairment or combination thereof that met the Listing of Impairments but had a back disorder and major depression. As to the spine condition, although evidence of nerve root compression characterized by neuro-anatomic distribution of pain and limitation of motion of the spine was present, the ALJ considered there was no motor loss, atrophy, or muscle weakness. (*Id.*).

As to the mental condition, the ALJ indicated plaintiff Cabán-Valentín received treatment from a psychologist and a psychiatrist just once a month and was prescribed anti-depressant medication. (Docket No. 5, Transcript pp. 34-51). The medical reports

indicated Cabán-Valentín was fully oriented, without panic attacks, had good remote memory and only mildly impaired short-term memory. The ALJ concluded the mental impairment did not meet the criteria of the Listing of Impairments. Plaintiff's allegations that limitations of activities of daily living were fairly limited, were not considered fully credible for according to the ALJ the limited daily activities could not be objectively verified to any reasonable degree of certainty and even if so considered, it was difficult to attribute such degree of limitation to the medical condition as opposed to other reasons for the medical evidence was considered weak. (Docket No. 5, Transcript, p. 20). Notwithstanding the Adult Functions Reports refer to social functioning as showing moderate difficulties, the ALJ disregarded these finding upon a note of a consultative neurologist who found Cabán-Valentín during physical examination as "cooperative". (*Id.*).

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

The ALJ applied in his administrative process the evaluation process mandated by law, insofar as concluding that plaintiff: (1) met the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through June 30, 2012; (2) did not engage in substantial gainful activity since the alleged onset date of disability on January 16, 2007; (3) allegations of severe impairments or combination thereof because of lumbar broad disc bulges at levels L4-L5 and L5-S1, cervical central and right paracentral disc protrusion at level C5-C6, with mild anterior cord compression, central canal stenosis, and impingement of the right side of the C6 nerve root, left shoulder partial tear of the subscapularis tendon and bicipital tenosynovitis and major depression

constituted severe impairments; (4) plaintiff did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) upon careful consideration of the entire record prior to December 3, 2007, onset date of alleged disability, plaintiff Cabán-Valentín retained the residual functional capacity to perform medium work, except that the she could perform unskilled and repetitive work. The ALJ found above residual functional capacity for medium work allowed plaintiff Cabán-Valentín to perform her past relevant work as kitchen worker, and thus, she was considered not under disability. (Docket No. 5, Transcript pp. 18-21).

The ALJ concluded the patient's cervical and lumbar discogenic disease did not meet or equal the severity criteria although she did suffer from a disorder of the spine, with evidence of nerve root compression characterized by neuro-anatomic distribution of pain and limitation of motion of the spine. (*Id.*, p. 19). As to the mental impairment, it was considered it did not meet the listing either. She had symptoms of depression, anxiety, forgetfulness, social isolation, lack of concentration, insomnia and auditory hallucinations.

The ALJ also mentioned plaintiff's pain and other symptoms but considered these not credible prior to December 3, 2007, to the extent these were inconsistent with the assessed residual functional capacity. The ALJ considered there was lack of gross pathological findings in the magnetic resonance test or nerve entrapment. There was no muscle atrophy and, although there were tenderness in the cervical and lumbar paraspinal

muscle, there was slight strength decrease in all extremities. (*Id.*, pp. 21-22). Plaintiff was provided with conservative treatment for his exertional limitations. (*Id.*, p. 23).[3]

## LEGAL ANALYSIS

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of

---

[3] The ALJ acknowledged the patient complained of pain to her treating physicians in the upper and lower back pain and in the lower extremities and these complaints were documented in the medical record. However, the ALJ concluded objective and clinical evidence rendered pain allegations as less persuasive. (Docket No. 5, Transcript, p. 23).

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be

disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

The ALJ in the instant case examined and analyzed plaintiff's case following the relevant five steps above described, as applicable, and at step four considered plaintiff Cabán-Valentín could perform her past relevant work as kitchen worker.

The claimant has the burden under steps one through four of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, plaintiff Cabán-Valentín was found by the ALJ able to perform her previous past relevant work as kitchen worker and, thus, there was no need not continue from the examination after said step four consideration. By determining the residual functional capacity for full range of medium kind of work and through the testimony of a vocational expert Dr. Puig, the ALJ concluded plaintiff Cabán-Valentín was not under disability. (Docket No. 5, Transcript, pp. 10-48).

In plaintiff's memorandum of law, she submits the ALJ determined that she could perform her previous relevant work as kitchen worker despite the vocational expert's testimony that said job required the ability to walk around, grab, pull, push and lift objects approximately 25 pounds frequently, and to have good concentration and attention, good judgment and emotional stability. (Docket No. 18, p. 8). The ALJ had even previously determined that plaintiff presented moderate limitations regarding activities of daily living, moderate limitations or difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace. The conclusion that plaintiff could perform her past relevant work was inconsistent with the demands of said job as kitchen worker and the residual capacity that could be determined from the record. The ALJ should be allowed to meet his burden as to the existence of jobs that plaintiff could perform considering her limitations. For said purpose, the vocational expert should be able to testify if in spite of limitations and residual functional capacity plaintiff Cabán-Valentín could perform other alternative work which exists in significant numbers in the national economy. (*Id.*, p. 14).

Additionally, plaintiff's memorandum avers the vocational expert (Dr. Puig) was not presented with any hypothetical question whatsoever and only testified regarding plaintiff's vocational profile. (*Id.*, p. 11). Thus, plaintiff Cabán-Valentín submits that, unless a vocational expert's testimony contains all relevant facts, it cannot be considered to have probative value and such facts cannot be sufficient substantial evidence when the ALJ has ignored evidence, misapplied the law or judge matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

Thus, unless the ALJ deploys the proper legal standards and finds facts upon proper quantum of evidence, no substantial evidence supports the administrative decision denying plaintiff's disability claim. The Court of Appeals the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

Insofar as to the lack of hypothetical questions to the vocational expert Dr. Puig, the testimony of a vocational expert who, in response to the ALJ's hypothetical, opined that plaintiff could perform a number of jobs cannot not serve the ALJ as a finding of plaintiff

not being not disabled for the hypothetical questions impermissibly omitted any mention of a significant functional limitation arising from the uncontested medical conditions of musculo-skeletal and mental condition which do not rest on controverted medical evidence as to their existence and limitations. *See* Rose v. Shalala, 34 F.3d 13,19 (1st Cir. 1994) (remanding for further proceedings because the ALJ did not ask the vocational expert proper questions about non-exertional limitations); *see, e.g.*, Arocho v. Secretary of HHS, 670 F.2d 374, 375 (1st Cir.1982).

Succinctly, a review of the medical evidence of record shows Dr. Abraham Beauchamp-Cruz (hereafter "Dr. Beauchamp") conducted a psychiatric evaluation in July 18, 2006, upon complaints of a depressive mood, insomnia, isolation, irritability, hallucinations, mental blocks. The patient did not socialize and was fully dependent on the husband. Medications prescribed were Paxil and Restoril. The patient also suffered bilateral carpal tunnel, high blood pressure, diabetes, arthritis and herniated discs. (Docket No. 5, Transcript, p. 108). The patient was described as having indifferent attitude, depressed affect mood, dull affect. She was not coherent, relevant or logical, with flight of ideas and mental blocks. She had suicidal and homicidal ideas without attempts. (*Id.*, p. 110). There were perceptual disturbances; attention and concentration was impaired as was immediate, recent and remote memory. Judgment and insight were poor. (*Id.*, p. 111). The diagnosis was of severe major depression with psychotic feature, borderline intellectual functioning, high blood pressure, arthritis, diabetes, bilateral carpal tunnel and lumbosacral injuries. Dr. Beauchamp refers to monthly visits from July 2006 through July 2007.

(Docket No. 5, Transcript pp. 112-124). A subsequent report stated that after 33 monthly visits of psychotherapy the patient did not improve and her clinical profile was more compromised. (*Id.*, p. 193).

Dr. Eric M. Quiñones-Medina (hereafter "Dr. Quiñones") referred to a first visit in November 15, 2003 and last visit on November 27, 2007. The diagnosis was of muscle spasm, diabetes mellitus II, depression and insomnia. There was muscle pain on the back neck shoulder and lower back, reduced grip strength and swelling of the joints. There were numerous complaints of pains and psychological condition that affected same. The side effects of medication were described as drowsiness, generalized weakness and hypoactive. (*Id.*, pp. 125-129, 134-137). Dr. Quiñones referred to a need for frequent breaks during a work-day, limited to lifting no more than ten pounds occasionally, limitation in doing repetitive reaching, handling or fingering. (*Id.*, p. 132).

Previously in April 22, 2005, the roentgenologic consultation of the lumbar spine showed a straightening of the lordosis, diffuse spondylosis, most severe at L1-L2. (*Id.*, p. 152). The MRI of the left shoulder dated August 13, 2008, described a small partial tear to the subscapularis tendon and bicipital tenosynovitis. (*Id.*, p. 162). An MRI of the lumbar spine of January 17, 2007, showed broad disc bulges at L4-L5 and L5-S1 with mild acquired spinal canal stenosis and mild left L4-L5 neural foramina stenosis. (Docket No. 5, Transcript pp. 143, 397). For January of 2007 there was no evidence of radiculopathy or neuropathy. (*Id.*, p. 180). By 2008, the MRI of the cervical spine indicated C5-C6 and right paracentral disc protrusion with mild anterior cord compression, central canal

stenosis and impingement of the right sided C6 nerve root. (*Id.*, p. 163). X-rays of the lumbosacral spine in 2008 also showed bridging osteophyte, antero laterally at T12-L1 and L1-2 levels. (*Id.*, p. 181). The State Insurance Fund provided treatment because of cervical and lumbar pain and there was a recommendation for neurosurgery and anesthesiology evaluation, meanwhile the patient was referred to a physiatrist and therapy. (*Id.*, pp. 164-177).

The past relevant work as kitchen worker included cooking, cleaning and attending to students at a school lunch facility. Cabán-Valentín was to stand and walk for about six hours, grasp and pull objects frequently, carry big kitchenware and food trays. The job involved occasional carrying of 50 pounds and frequently carrying twenty five pounds, without having any supervisory duty. (Docket No. 5, Transcript p. 258).

A neurological evaluation by Dr. Samuel Méndez dated August 29, 2007, refers to no motor atrophy and no spasm, with tender cervical and lumbar paraspinal muscles. There was no sensory deficit and gait was not affected. The diagnostic impression was of chronic lumbalgia and cervicalgia, diffuse arthralgia. (*Id.*, pp. 337-339). X-rays of similar date indicated there was thoracolumbar spondylosis, discogenic disease at L1-L2 and straightening secondary to muscle spasm. (*Id.*, p. 340).

Dr. Japhet Gaztambide-Montes submitted a psychiatric medical report having treated plaintiff Cabán-Valentín since November 29, 2006 and additional visits throughout June 28,2007. It refers to psychomotor retardation. The diagnosis was DSM V 296.33 and the prognosis was poor. (*Id.*, pp. 411-419).

Elizabeth Cabán-Valentín v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1962 (CVR)
Page No. 15

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[4] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Additionally, the ALJ needs also to consider the aggregate effect of the entire constellation of ailments, including those impairments that may on isolation may be considered not severe. 20 C.F.R. §404.1523. The perusal of the record as a whole fails to support substantial evidence to support the administrative decision in this case. Furthermore, the lack of any hypothetical questions to the vocational expert failed to present the established conditions that could have served as substantial evidence to the determination that plaintiff could perform her past relevant work or other work presented for assessment within the residual functional capacity determined. If a vocational expert's testimony is to have probative value, the hypothetical questions posed must contain all relevant facts. Arocho v. Secretary of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982) (in order for a vocational expert's answer to a hypothetical question to be

---

[4] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from medical authorities).

In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is not supported by substantial evidence in the record as whole. The case shall be remanded for further proceedings, including assessment by the vocational expert on how plaintiff's combination of impairments and/or limitations, exertional and non-exertional, eroded into her work profile and in the performance of her previous relevant work as a kitchen worker. If necessary, the vocational expert should also be allowed to testify as to other available work, within medium and less than medium level of exertion, that exists within the assessed residual functional capacity. It may be considered reasonable also to allow a medical expert to examine the medical record within the excluded period of alleged onset date of disability as of January 16, 2007 and up to December 3, 2007, to ascertain the extent of the cutting date of disability in reference to the medical record and plaintiff's combination of impairments.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes the Commissioner's decision is not supported by said substantial evidence criteria. As such, the Commissioner's decision is **REMANDED**.

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 11th day of January of 2013.

                                          S/CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ RIVE
                                          UNITED STATES MAGISTRATE JUDGE